KANSAS PACIFIC RAILWAY CO. v. TWOMBLY, Administratrix.

1. The verdict of a jury in an action on the case will not be disturbed unless it appears to be clearly against the evidence, or without support.

2. On a railroad track, where cars frequently pass, every one is bound to be vigilant in his own protection, according to the common experience of men of ordinary prudence under like circumstances, but the want of such vigilance is matter of defense in an action against the railroad company to recover damages for injuries sustained because of its negligence.

3. Upon facts undisputed, the inference of negligence may be so strong that the law will not admit a right of action in the plaintiff, but where the facts are such that different minds may honestly draw different conclusions, it is proper to refer them to the jury to determine.

4. Where deceased crossed the railway track of defendant, and was met in a hurried manner by a friend on the adjacent parallel track of another road, thence turned back to defendant's track, and held there in conversation during the passage of a long train running at the speed of five or six miles an hour on the adjacent road, and having separated, the deceased was then

killed by a switch engine backing up on defendant's track in a direction opposite that of the passing train, the survivor having got twenty feet away before being apprised of the accident, and not having seen the switch engine, nor heard it because of the noise of the passing train; *held,* that the turning back of deceased was not an act of negligence which the law will recognize as such, but that it was properly left to the consideration of the jury; *held,* also, that it was properly left to the jury to determine whether or not the deceased was guilty of negligence, under the circumstances, in not observing the approaching engine.

*Appeal from District Court of Arapahoe County.*

THIS was an action on the case under the statute (act of 1872, p. 117), by Louisa Twombly, as administratrix of the estate of George W. K. Twombly, against the Kansas Pacific Railway Company, to recover damages for the death of the intestate, caused, as she alleged, by the negligence of the defendant in the management of a switch engine then being run on the defendant's track, at the intersection of I and Wynkoop streets in the city of Denver. The cause was tried at the September term, 1873, of the district court of Arapahoe county, resulting in a verdict for the plaintiff in $5,000. A motion for a new trial having been interposed and overruled, the defendant appealed. The only question presented to this court for review was the ruling of the court below upon the motion for a new trial.

It appeared in evidence upon the trial that the defendant and the Rio Grande Railroad Company had railway tracks running parallel, between four and five feet apart, along Wynkoop street. The defendant's track was a broad gauge, located west of that of the Rio Grande, which was a narrow gauge. One James W. Truax was called by the plaintiff, and testified that he had known George W. K. Twombly since 1867, and saw him about one minute before his death; met him on the narrow gauge track on I street; it was in the part of the street used for wagons and the like; they stopped very near the gutter; did not see Twombly at the time it struck him; witness was going toward the river and put his hand on Twombly's shoulder, as the narrow gauge train was likely to pass, and caused him to move

on to the wide gauge track, and spoke to him — less than a
minute, probably, about a plow; were at the time facing
the depot, rather looking at the hind end of the passing
narrow gauge train; witness passed along about twenty feet,
heard an out-cry, and saw that the other engine had passed
over and killed Twombly; the Kansas Pacific engine came
from the south toward the depot, the direction in which
they had been looking; the Rio Grande train was going
south, and they were watching the hind end of it; witness
scarcely stopped to speak, being in a great hurry; did not
see the Kansas Pacific engine until it had run over Twombly;
must have been some four or five steps, or twenty feet from
the engine when it passed; when witness looked back, the
Rio Grande train had very near, if not quite, cleared the
way; when he met Twombly, was not inclined to wait, so
took him along a few steps to speak to him; did not
hear the Kansas Pacific engine approaching or any warn-
ing of it; the outcry was the first notice of it; did not
hear any bell rung on it; should think the bell was not
rung; the narrow gauge bell was ringing and witness'
attention was drawn to that; saw or heard nothing of
the Kansas Pacific engine until it had passed; did not think
he could have mistaken the Kansas Pacific bell for the Rio
Grande; the sounds of the two bells being very different
and easily distinguishable; did not see Twombly when he
was struck, but found him some thirty or forty feet toward
the depot, from where he left him standing; his body was
lying between the broad and narrow gauge tracks and the
head lay between the two tracks; the Kansas Pacific en-
gine was still in motion, passing toward the depot, when
witness heard the outcry raised by some boys; the body
was not moved after witness looked round; on hearing the
outcry he missed Towmbly and stepped back, and, as the
engine got by, saw what it was; when witness left Twombly
he stood by the division of the street and sidewalk, close by
the gutter; the streets are eighty feet wide, of which twelve
feet are used for a sidewalk; Twombly was just on the street
side of the gutter; when witness met him both were walk-

ing fast and witness took him along because he had only just time to cross ahead of the narrow gauge; did not think the Kansas Pacific engine was moving faster than three or four miles an hour; the noise of the narrow gauge train drowned the noise of its approach; witness and Twombly were standing with their backs the way the train was going, and facing diagonally toward the train; had known Twombly since 1867, and did considerable business with him.

It also appeared that from the point where the accident occurred, the view was plain and unobstructed for some. distance each way. That the deceased had lived in the immediate vicinity for a year or more. That the accident happened between half-past six and seven o'clock in the morning of July 1st, 1872.

It was insisted upon the argument by the appellant that deceased had been guilty of contributory negligence, and that the court below should have so held as matter of law upon the facts proved and should have set aside the verdict. The appellant also insisted:

"1. That this court must be governed by the common-law rule as to contributory negligence. That any negligence upon the part of the person injured, contributing to it, will prevent recovery.

2. That where the facts are undisputed, and there is no doubt as to the inferences to be drawn from such facts, the question of the existence of negligence is for the court and not for the jury.

3. That to pass on to or stand upon a railroad track, without looking in each direction, is negligence that will preclude any recovery for an accident to which such negligence contributes."

Messrs. SAYRE, WRIGHT & BUTLER, and Mr. J. P. USHER and Mr. C. E. BRETHERTON, for appellant.

Messrs. CHARLES & DILLON, for appellees.

HALLETT, C. J.   At the last term we examined the bill
of exceptions in this record, and the time and manner in
which it was perfected, and arrived at the conclusion that
the several rulings of the court in admitting and rejecting
testimony at the trial, and in directions to the jury were
not properly preserved, and that the only matter presented
for review in this court is the ruling upon the motion
for new trial. 2 Col. 559.   According to that ˙decision
and an earlier case (2 Col. 169), the only question for
present consideration is the finding of the jury, which we
cannot disturb, unless it appears to be clearly against evi-
dence or without support.   This view is not controverted,
but it is said that the evidence discloses a want of due care
on the part of appellee's intestate at the time of the alleged
injury, which contributed to the result.   This, if true, will
defeat the action, for it is considered that in a place of dan-
ger, such as a railroad track on which cars frequently pass,
every one is bound to be vigilant in his own protection,
according to the common experience of men of ordinary
prudence under like circumstances.   But it does not rest
with the plaintiff to prove that deceased used such care and
caution, although it is enough that the absence of it ap-
pears in his evidence.   *Railroad Co.* v. *Gladmon*, 15 Wall.
401.   Upon facts admitted or clearly proved the inference
of negligence in the party injured is often so strong that
the law will not admit the plaintiff's right of action, but in
other cases it is said to be a question for the jury.   *Rail-
road Co.* v. *Stout*, 17 Wall. 657.

It is often difficult to trace the line between these classes
of cases, but here it appears to be quite distinct.   The situ-
ation of deceased at the time of the accident was peculiar,
and it is not at all certain that a prudent man under like
circumstances would have behaved differently.   Two rail-
road tracks were laid in a public street of the city of
Denver, one of which was used by the Denver and Rio
Grande Co. and the other by appellant.   The general
course of this street is said to be north and south, and it is

intersected at regular intervals by other streets crossing at right angles, all of which were used by the public. On one of these cross streets deceased came from the west first to the track of appellant, which was upon that side, and then to the track of the Rio Grande Co. on which a train was approaching from the north at a speed of five or six miles an hour. On this latter track and directly in front of the approaching train, deceased met one Truax, who put his hand on deceased's shoulder and pressed him back to appellant's track as if to speak to him. At the time he so met deceased, Truax was coming from the east in a rapid walk or run, and the Rio Grande train was so near the place of meeting that there was no time for words, and to use his own phrase, Truax carried deceased back in order that he might speak with him. In this it is supposed that deceased exhibited a want of care, for it is said, that having passed appellant's track in safety, he should not have returned to it. And perhaps this is so, but we must remember that all men do not decide wisely in sudden emergencies of danger. We are not very well informed as to Truax's manner in approaching deceased, except that it was hurried, and, therefore, we cannot say what the latter might have inferred from his conduct. Possibly Truax's appearance and bearing was such as to indicate that new dangers lay in the pathway of deceased, and certainly his conduct indicated that he had a matter of importance to impart. To hold as matter of law that a correct decision must be made upon the instant, under the circumstances, is too large a demand upon human infirmity. Nor can it be said with certainty that at the point of turning back, deceased had notice of the danger which awaited him on appellant's track. He had just crossed that track safely, and if, in doing so, he looked for a reasonable distance in each direction along the track, it does not appear that appellant's locomotive was then within such distance. If upon coming to a railroad track in a city, a footman is bound to look for cars in both directions (a point upon

which we express no opinion), it is plain that he is not, in all cases, required to look as far as the track may be seen. In cities and towns, railroad trains are usually moved slowly, and there is not the same reason for looking to a great distance along the track that obtains in the country where trains are driven at high speed. This may not be true everywhere in eastern States, where express trains are often taken through considerable towns and villages at high speed, but it is generally true with us, and the evidence warrants the belief that the roads in question were so used.

If, then, upon first coming to appellant's track as a footman, deceased looked in each direction for a reasonable distance, as it is said he was bound to do, it does not appear that the locomotive was then within such distance, and therefore it cannot be said that he was advised of danger from that locomotive. Nor if he saw the locomotive with the tender in advance, at a distance of several hundred feet, can it be said with certainty, that he knew that it was approaching him. In a front view, with piston and driving wheels in motion, the approach of an engine is much more easily detected, than when it is backed up, and the tender only, on low wheels, is in the line of vision. Upon this we conclude, that turning back from the Rio Grande track was not an act of negligence, which the law will recognize as such, but that matter was for the consideration of the jury, to whom it was properly referred, and we will now advert to what occurred afterward.

The carelessness imputed to deceased, at this point, is, in not looking for the approaching locomotive, for it is probable that he could not hear it, on account of the noise made by the Rio Grande train. If, as claimed by counsel, he remained on the track for a considerable time, without looking, there would be some ground for the charge, but the jury may have reached another conclusion on the evidence. The only witness to that interview was Truax, and although he stated that he and deceased stopped on the

track, at another time he says, that he "almost kept right along."

But few words were exchanged, and Truax ran away without seeing or hearing the approaching locomotive, and had gone but twenty feet when the accident occurred. Upon this the jury may have believed that deceased paused but a few seconds, and as to that, it stands in the same category with the other circumstances of this affair.

We think, therefore, that as a matter of law it cannot be said that the negligence of deceased directly contributed to his death, and whether this was true as matter of fact, was for the consideration of the jury. To them it was properly referred, and by them it has been determined, in conformity with established principles of law. Those principles are recognized in the following cases, with which, as we have learned from the argument, counsel are entirely familiar. *Railway Co.* v. *Whitlaw's Adm'r*, 13 Wall. 270; S. C., 2 Bissell, 282; *Wheelock* v. *Boston & Albany Railroad Co.*, 105 Mass. 203; *Marietta & Cincinnati Railroad Co.* v. *Picksley*, 24 Ohio St. 654. No point is made as to the negligence of appellant's servants, which appears to have been pretty clearly made out, and, therefore, we do not discuss it. As to the suggestion that the injury was inflicted by the Rio Grande train, it is not supported by the evidence, and the jury have found otherwise. Upon the whole case we see no reason to disturb the verdict, and the judgment will be affirmed, with costs.

*Affirmed.*