## DOZENBACK V. RAYMER ET AL.

13   451
15   543
13   451
17   199
13   451
9a   359
13   451
12a   303
13   451
15a   209
13   451
20a   205

1. REFUSAL OF INAPPLICABLE INSTRUCTIONS NOT ERROR.— It is not error to refuse instructions which assert abstract propositions of law inapplicable to the issues and facts of the case on trial.
2. COURT NOT REQUIRED TO DUPLICATE INSTRUCTIONS.— Where correct instructions are given covering all the points of a case, the refusal of others, though correct in themselves, is not ground of error.
3. HOW INSTRUCTIONS ARE TO BE CONSIDERED AND CONSTRUED.— In construing a charge, each instruction is to be considered in connection with the entire charge; and if, in considering the charge as a whole, the supreme court is satisfied that the jury were not improperly advised as to any material point in the case, the judgment will not be reversed on account of an erroneous instruction.
4. SEPARATION OF JURY NOT OF ITSELF GROUND FOR NEW TRIAL.— Although the Civil Code (Gen. St. 1883), section 172, provides that after hearing the charge a jury may either decide in court or retire for deliberation, the mere separation of a jury in a civil case, after the evidence, charges and arguments are concluded, will not per se be sufficient ground for setting aside the verdict and granting a new trial. It must appear that there is a strong probability that the jury have been tampered with or influenced to return the verdict which is sought to be set aside.

*Appeal from District Court of Clear Creek County.*

Mr. R. S. MORRISON and Mr. C. C. POST, for appellant.

Mr. R. H. GILMORE and Mr. FRANK TILFORD, for appellees.

RICHMOND, C.   This action was brought to recover damages for personal injuries to plaintiff, Emile Dozenback, while in defendants' employ as a miner, caused by the premature explosion of blasting powder, known as the "Rend Rock" powder.   Under the pleadings of this cause the substantial issues were: *First,* as to the safety of the Rend Rock powder; *second,* whether the defendants exercised care in supplying a reasonably safe powder, and permitting the Rend Rock brand to be used by plaintiff; *third,* whether plaintiff knew, or ought to have known,

the quality of the powder, and whether he exercised due care in its use.

Plaintiff claimed that the Rend Rock powder, the premature explosion of which resulted in the injuries for which this action is brought to recover damages, was a brand that had been out of use for a long period of time, and that the particular portion which the defendants purchased and supplied to plaintiff and other miners working upon their mine was very old, and that by reason of its age it was decidedly more dangerous than other powders, or the Atlas powder, which had been used by the miners on the defendants' mine.

The testimony is quite voluminous. That introduced on the part of plaintiff tends to establish the theory that this particular brand, known as the "Rend Rock" powder, had not been used by miners in Colorado for several years; that the explosives which were used at the time plaintiff was injured were purchased by defendants, and were old. Many witnesses testify that by reason of its age it was very dangerous, and liable to explode prematurely, even when being carefully handled. Witnesses on the part of defendants claim that age does not necessarily contribute to increase the liability to explode, under ordinary conditions. Some of the witnesses testified that the Rend Rock powder is as safe as the Atlas powder, which, it is admitted, is in general use among miners in Colorado.

To the admission and rejection of testimony no errors are pressed by the appellants in their argument. In fact, they expressly waive consideration of such errors, and confine themselves to the discussion of certain instructions given and refused, and the action of the court in allowing the jury to separate for the night, after the evidence was admitted, the instructions given and the arguments concluded.

Plaintiff asked the court to give the following instruc-tions to the jury, which the court refused, and this re-

fusal is assigned for error: "The court instructs the jury that where a party, working a mine, puts a new and untried explosive in the hands of his miners, without informing them of the special risks attendant upon its use, or without specified instructions as to its use, he is liable for accidents resulting from the use thereof, without any fault on the part of the miner using the same."

" The court instructs the jury that if they find from the evidence that the powder in question had been out of market for a number of years, or so long that the instructions for using the same may reasonably be presumed to have been forgotten, in such case, if a party, before such powder has again come into use, buys it and supplies it to his miners, it is the same, so far as negligence is concerned, as if he had purchased a brand before unknown in the market."

"The court instructs the jury that if defendants, under the evidence, left a dangerous and a comparatively safe powder in the same magazine, it gave both powders equal credit by whoever put them there, and a miner was not guilty of negligence in selecting either."

The first of the foregoing instructions is objectionable, for the reason that it states an abstract proposition of law, and assumes that the Rend Rock powder is a new and untried explosive. No evidence was introduced on the part of plaintiff to establish this fact. On the contrary the evidence seems to establish the fact to be that it is a brand of powder well known to miners, and that it had been frequently used by them in Colorado. The plaintiff does not even proceed in his complaint upon the theory that it was a new and untried explosive, but solely upon the theory that it was dangerous because of its age. The language of the complaint is, "which cartridge had become unsafe by reason of its age."

"It is error for a judge instructing the jury to assume the existence of material facts which are in issue by the

pleadings, and which are controverted upon the evidence." 2 Thomp. Trials, § 2295.

The evidence did not warrant the next instruction, as the testimony on the part of plaintiff established the fact to be that this powder had not been out of the market. William H. Emanuel, a witness sworn on the part of defendants, testified that from the books of the Laflin & Rand Powder Company, of which he was the agent, he knows one hundred and sixty-three thousand pounds of this powder had been sold in Colorado. Besides, we think plaintiff obtained from the fourth and fifth instructions given, practically, all he was warranted in claiming upon this view of the case, and hence the refusal to give the last two instructions above quoted did not affect his substantial rights, and under such circumstances the refusal, even if erroneous, is not a ground of reversal. Code Proc. § 78.

Exceptions are taken to instructions five, eight and nine, given by the court. The contention is that these instructions do not fully cover the issues presented by the pleadings, and that the instruction No. 5 assumed that if the defendants made inquiries regarding the safety of the powder, as ordinarily prudent men would make if they were going to use the explosive themselves, then they were not guilty of negligence; that the theory and evidence that an old cartridge containing nitro-glycerine is unsafe is entirely disregarded.

It may be admitted that these instructions, standing by themselves, do not fully respond to the issues of the cause, and that they are objectionable for the very reasons presented by appellants; yet the rule of this court is that in construing a charge to a jury each instruction should be considered in connection with the entire charge, and if, considering the charge and instructions as a whole, the supreme court is satisfied that the jury were not improperly advised as to any material point in the

case, the judgment will not be reversed on account of the erroneous charge." *McClelland v. Burns*, 5 Colo. 390; *Thatcher v. Rockwell*, 4 Colo. 375.

This compels us to review the entire charge of the court to the jury. The court, in calling the attention of the jury to the issues, said that "it was the duty of the plaintiff to show by a preponderance of proof — *First*, that he was in the employ of one or of all of the defendants at the time of the explosion; *second*, that the defendants, or one of them, furnished the explosives to plaintiff; *third*, that the explosives so furnished were not as safe as those ordinarily used, and were unknown and untried explosives, or that they became unsafe by reason of age; *fourth*, that the defendants, or either of them, were guilty of negligence in purchasing and furnishing the same to the plaintiff."

In the eleventh instruction the court instructs the jury: "If you find from the evidence that the plaintiff was injured by the explosion of an explosive called the 'Rend Rock,' while plaintiff was in the due course of his employment by the defendants, or either of them, and that the said Rend Rock was furnished the plaintiff by the defendants, or either of them, and you find that the Rend Rock had been extensively used in Colorado for several years in mining; and if you find that said Rend Rock had not become unsafe by reason of age, and that it is not more dangerous than that ordinarily used for blasting in mines,— the defendants are not negligent, and the plaintiff cannot recover."

The above instruction, it occurs to us, emphatically placed before the jury the question of whether or not the powder in question had become dangerous by reason of age. This question was fairly submitted to the jury by this and other instructions. Therefore, under the authorities heretofore cited, we cannot say that the court erred in its instructions to the jury.

The next question presented for our consideration is

the error assigned on account of the action of the court
in permitting the jury to separate for the night after
the case had been fully argued, the jury charged, and
the cause closed.   It appears from the record that "in the
afternoon and evening of the 16th day of December,
A. D. 1885, immediately following the giving of the in-
structions by the court to the jury, came the arguments
of counsel, which were continued up to about the hour
of 10 o'clock P. M. of said day, at which hour all of the
evidence had been offered and heard by the jury, all
the instructions allowed by the court had been read to
the jury, and counsel for plaintiff and defendants had
fully argued the case to the jury, so that the case was
entirely completed and closed.   The court thereupon sug-
gested that he would permit the jury to separate for the
night, each to their several places of abode and lodging,
not being in charge of any officer of the court, and that
they might return into court at the hour of 9 o'clock
A. M. of the next day; whereupon counsel for plaintiff
and counsel for defendants united in the following writ-
ten request to the judge of said court: 'There are rea-
sons why, in our judgment, the jury ought to retire
to-night.   (1) We have learned that one juror has a son
on the Kitty Clyde.   (2) Another juror is in the employ-
ment of two persons who were subpœnaed as witnesses.
Of course we cannot get up and state publicly these rea-
sons. [Signed]   R. S. MORRISON, CHAS. C. POST, Coun-
sel for Plaintiff.'   'Without assenting to the statement,
viz., 1 and 2, above, we consent, and knowing nothing
about the matters therein mentioned.   We have no sort
of objection to the jury retiring to-night, and we join
with plaintiff's counsel in the request above made.
[Signed]   TILFORD & GILMORE, Counsel for Defendants.'

   But the court refused said request, and permitted the
jury to separate for the night, each to their several
homes or places of abode or lodging, not in the charge
of any officer of the court, whereupon, and after the jury

had left the court-room, the plaintiff then and there excepted to the action of the court; whereupon the court adjourned until 9 o'clock on the morning of the 17th day of December. And upon the incoming of the court at the hour of 9 o'clock A. M. of said 17th day of December, A. D. 1885, came the jury, who were thereupon, and after a separation of an entire night after the case had been given to said jury, commanded to retire and consider their verdict, in charge of a sworn officer of the court.

Section 172 of the code (Gen. St. 1883) provides: "After hearing the charge a jury may either decide in court or retire for deliberation." The practice obtains, under the code, of charging the jury before the argument. Therefore it is impossible to enforce strictly this provision. Fifth subdivision of section 168, Code 1883.

It further appears from the record that the evidence, charges and arguments in this cause were concluded at the hour of 10 o'clock in the evening; that on motion for a new trial affidavits were filed on the part of plaintiff and defendants,—on the part of plaintiff to establish the possibility that some of the jurors had been corrupted during the interval, and on the part of defendants to the effect that the intimation of the plaintiff, that the cause had been talked of, or that the jurors had been approached, was untrue. It is impossible for us to say, as it was impossible for the court below to say, that the jury, on the following morning, did not come to the consideration of the cause with a mind entirely free from contamination, prejudice or influences of any kind. While we admit, to say the least of the provision above referred to, that it contemplates upon the close of the cause that a jury shall retire for deliberation, and during such deliberation shall not separate, yet we are not prepared to go to the length of saying that even under this provision it is not in the discretion of the court to permit the jury to separate under certain circumstances.

It is not the general practice in this country to isolate jurors in civil cases from the rest of the public during the necessary adjournment which takes place during the progress of the trial.   On the contrary, they are permitted to return to their homes at night, and to mingle freely with the public, after receiving an admonition from the bench not to converse with any one, nor to receive communications from any one touching the cause on trial.   We presume this admonition was administered by the court in this case.   In *Downer v. Baxter*, 30 Vt. 467, a similar question was presented to the court.   It appears in that case that after the jury had been charged by the court, and retired for consultation, and before they had agreed upon the verdict, they separated some little time to go to their dinners, without an order of the court and without being under the charge of an officer. The question was, Does this constitute such irregularity in the proceedings as will *per se*, as a matter of law, render the verdict of a jury a nullity?   The court say:   "It is true the statute declares that when the court have committed a cause to the consideration of a jury, 'such jury shall be confined, under the care of an officer appointed by the court, and sworn for that purpose, until they are agreed upon a verdict or are discharged from giving a verdict by the court.'"   This statute was held to be directory, and the court refused to set aside the verdict.

It is true that, if the separation of the jury was attended with reasonable suspicion of abuse, a new trial would be granted.   This inquiry necessarily involves matters of fact, and the question whether the ends of justice and purity of jury trials require a new trial to be granted in a particular case rests in the sound discretion of the court which tried the cause.   "But even then, where their deliberations are protracted, or where, from the hour of adjournment or other circumstance, it seems necessary, it is believed to be within the discretion of the

judge to allow them to separate for needed rest or refreshment before making up their verdict." Thomp. & M. Juries, § 314. This being true, it only remains for us to determine whether the action of the court in this case, of allowing the jury to separate, was an abuse of its discretion. Considering the time occupied in the trial of the cause, and the late hour when the cause was concluded, we are not prepared to say that the action of the court in permitting the jury to separate for the night and reconvene the following morning for their deliberation, under a sworn officer, was an abuse of the discretion vested in it by the law. More especially do we feel unauthorized to disturb the verdict when the affidavits satisfactorily establish the fact to be that the jurors, during the separation, were in no way approached or influenced.

The rule seems to be that the mere separation of a jury will not, *per se*, be sufficient ground for setting aside the verdict and granting a new trial. Something else must appear; that is, that there was a strong probability that the jury had been tampered with or influenced to return the verdict which is sought to be set aside. This is the accepted doctrine in civil cases in nearly all of the states of this Union. Proff. Jury, § 395; 3 Wait, Pr. 163. We see no error in the proceedings of the court below. Therefore the judgment should be affirmed.

REED and PATTISON, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*