MOFFATT ET AL. v. TENNEY.

1. NONSUIT—CONTRIBUTORY NEGLIGENCE.—The court will not grant a nonsuit or direct a verdict in favor of a defendant, on the ground of plaintiff's contributory negligence, unless the evidence, in the most favorable light in which it may be reasonably considered in behalf of plaintiff, shows that plaintiff, or his representative, was guilty of negligence which contributed to cause the injury, and without which the injury would not have happened.

   Contributory negligence is a matter of defense to be shown by a preponderance of the evidence, though it may sometimes be shown by the plaintiff's own witnesses.

2. DUTY OF EMPLOYERS—MINERS ENTITLED TO PROTECTION.—Where a person is engaged in a dangerous occupation it is the duty of his employer to exercise reasonable care and diligence in providing for his safety; this duty includes the exercise of reasonable care in

procuring and keeping in repair the machinery and appliances by which mining employees are carried to and from their work in the bowels of the earth.

3. INSTRUCTIONS—NUMBERING AND SIGNING.—The object in requiring prayers for instructions to be numbered and signed is not for the information or guidance of the jury, but for the convenience of the court and the protection of the parties litigant in the matter of preserving their objections and exceptions; if a party omits this requirement, or suffers the opposing party to do so without objecting in apt time, he will not be heard afterwards to complain of the omission.

4. WITNESS—CONTRADICTION—IMPEACHMENT.—A party may contradict, though he may not directly impeach his own witness; and this, even where the contradiction may collaterally have the effect of showing that his own witness was generally unworthy of belief.

5. NATURE AND MEASURE OF DAMAGES.—Section 3 of the act of 1877 concerning damages provides for compensatory, not exemplary, damages. The measure of damages is the pecuniary loss (not exceeding the statutory limit) which the party entitled to sue will be likely to suffer in consequence of the death of the deceased. Gen. Stats., sec. 1032; Mills' Stats., sec. 1510.

6. DUTY OF TRIAL COURTS—INSTRUCTING JURIES.—The duty imposed upon the trial court as to the form and style in which instructions to the jury shall be given, necessarily involves a large discretion. Unnecessary instructions do not necessarily make a charge erroneous; and instructions once given in substance need not be repeated.

*Appeal from District Court of Lake County.*

ACTION by wife to recover damages for the death of her husband. Mary Tenney was plaintiff, and David H. Moffatt, Jr., Jacob J. B. DuBois, H. A. W. Tabor and James G. Blaine were defendants, in the district court. The plaintiff obtained judgment for $5,000. The defendants bring this appeal.

Mr. J. B. BISSELL and Mr. C. J. HUGHES, for appellants.

Mr. C. C. PARSONS, for appellee.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The gravamen of the complaint is, that the negligence of

the defendants caused the death of the plaintiff's husband, Charles Tenney, thus rendering defendants liable to plaintiff in damages under the statute. 1 Mills' Ann. Stats., sec. 1509. The defense principally relied on is, that Tenney's own negligence contributed to cause his death, thus defeating plaintiff's recovery.

1. The ruling of the court denying defendant's motion for a nonsuit is the first matter assigned for error. The defendants introduced no evidence; but it is contended that they were entitled to a verdict and judgment as a matter of law upon the evidence produced by plaintiff.

This court has decided in numerous cases that the province of the jury in determining questions of negligence and of contributory negligence should not be invaded by the courts except in the clearest of cases. The court will not grant a nonsuit or direct a verdict in favor of a defendant, on the ground of contributory negligence, unless the evidence in the most favorable light in which it may be reasonably considered in behalf of the plaintiff shows that the plaintiff (or, as in this case, the representative of the plaintiff) was guilty of negligence which contributed to cause the injury as alleged, and without which the injury would not have happened. Contributory negligence is a matter of defense to be shown by a preponderance of the evidence, though it may sometimes be shown by the plaintiff's own witnesses. *Kansas Pac. Ry. Co. v. Twombly*, 3 Colo. 125; *Lord v. Pueblo S. & R. Co.*, 12 Colo. 393, 394; *Colo. Midland Ry. Co. v. O'Brien*, 16 Colo. 219; *D. & R. G. Ry. Co. v. Ryan*, 17 Colo. 98, and authorities cited in the foregoing opinions.

2. Tested by the foregoing principles, a brief statement of the evidence will suffice to show whether or not the trial court would have been justified in granting a nonsuit or in directing a verdict in favor of the defendants in this case.

In January, 1886, the defendants being the owners of the Maid of Erin lode mining claim situate in Lake county, Colorado, were employing a number of men in and about the work of developing and extracting ores from said mine at a

great depth. Charles Tenney, the plaintiff's husband, was one of these employees. On January 18, 1886, said Tenney, one H. S. Dean and one Frank Fuller were working together at a level, five hundred feet or more below the surface in said mine; they were under the immediate control of Reuben Brown, foreman of the mine. Some time in the forenoon of that day these three men were taken up from said lower level to the pump station about fifty feet above, to do a little work picking up timbers and cleaning up while the timbers about the shaft were being hewed or adzed off so that the cage would run smoothly. These timbers had become wet and swelled so that the cage, which had been used some time before for hoisting ore and carrying the men, would stick in some places. At the noon hour the three workmen were taken to the surface in a bucket to their lunch.

After lunch these men were taken back to the pump station in the bucket, and were told by the foreman to wait there until the cage should come down, when they were to go again to the lower level to resume work in the mineral. They were given to understand that the cage would be down in a few minutes. There was not much work for them to do at the pump station. After waiting for something over an hour, the foreman came down with the cage, and upon arriving at the pump station (according to the testimony of Dean and Fuller), he exclaimed, "Ho, boys, here is the cage:

The three men started for the cage; Tenney was nearest the cage, and got there first; the foreman had stepped from the cage; Tenney sprang into it, when immediately the cage fell, with Tenney in it, to the lower level, and Tenney was killed by the fall.

The foreman in his testimony says that he did not call out to the men, "Ho, boys, here is the cage;" he says that he gave them no order to enter the cage, and that he used no language calculated to convey the impression that they were to take the cage at that time. On the contrary, he testifies that the cage stuck in the timbers about two feet above the

level of the pump station, that he stepped off to look under the cage to see what was the matter, that as he straightened up, Tenney came forward and asked how he was making it, that he replied, " Pretty good," and then turned and saw the slack of the cable coming down, that he stuck his light on a post and took hold of the bell rope, that just as he pulled the cord he saw Tenney on the cage, that Tenney had passed around behind him and stepped on the cage without his knowing it, that he must have given a sort of jump to get on the cage, and that the cage immediately went down before anything could be done to rescue him.

The evidence certainly tended to show that the cage was not in good order; the clutches or safety catches were particularly defective; they were too much curved and the springs were too weak to make them work effectively.   The foreman testified that the object of the clutches or safety catches was to hold the cage, in case the cable should break or if it should slack, and that if the clutches had properly performed their office they would have caught the guides and prevented the cage from falling.   Counsel for appellant, in his elaborate brief, says: " It may well be granted, *ex gratia*, that the clutches in the cage were out of repair and failed to work." ' But, as the learned counsel further says: " This, without more, gives the appellee no right of recovery."

The evidence does not show that Tenney knew of the condition of the cage or of its defective clutches or safety catches. He was a common miner employed with drill and pick at three dollars per day.   The condition of the cage and the running of it, do not appear to have been within the sphere of his employment; his duty was to work under the direction of the foreman, who testified that he had the authority to employ and discharge such workmen when it was necessary.

Tenney was engaged in a dangerous occupation; he was working for the interest and profit of his employers; it was their duty, therefore, to exercise reasonable care and diligence in providing for his safety while thus employed.   This duty included the exercise of reasonable care in procuring and

keeping in repair the machinery and appliances by which their employees were to be carried to and from their work in the bowels of the earth. See *Wells v. Coe*, 9 Colo. 161, and cases there cited; also 2 Thompson on Negligence, 972.

Upon the evidence produced it was the province of the jury to determine whether the defendants had or had not exercised reasonable care and diligence in respect to the condition of the cage and its appliances for preventing accidents.

Furthermore, it was a question for the jury to determine from the evidence whether Tenney was acting in the line of his duty and with reasonable care and caution, or otherwise, in getting on the cage when he did. The evidence tended to show that he and his fellow workmen had been given to understand by the foreman that they were to go by the cage to the lower level to work in the mineral as soon as the cage should come down. The foreman's language, "Ho, boys, here is the cage" (according to the testimony of Dean and Fuller) was calculated to convey the impression that the cage had arrived for that purpose. According to the testimony of the foreman, his reply to Tenney that he was making it "pretty good," was in no sense a warning not to get on the cage. On the contrary, it was calculated to assure Tenney that everything was all right. No reason is perceived why Brown should not have told Tenney that the cage was stuck, instead of answering that he was making it "pretty good." From the evidence, the jury might well come to the conclusion that Tenney had reason to consider himself called to go by the cage to the lower level. Under such circumstances, his prompt response to such call should not be set down against him, but rather to his credit as a willing workman zealous to advance the interests of his employers. The issue upon the alleged contributory negligence of Tenney, as well as the issue upon the alleged negligence of the defendants, was upon the evidence adduced proper to be submitted to the jury. The court did not err in denying the motion for a nonsuit.

3. It is insisted that the court erred in giving to the jury

certain special instructions asked by counsel for plaintiff, for the reason that the same were not "numbered and signed by the plaintiff or his attorney asking the same," as required by the Code. Section 187, clause 5. It distinctly appears that each of the instructions prayed by the respective parties were *marked or indorsed* by the court indicating its action thereon as the Code requires. But it does not appear that the omission of plaintiff's counsel to sign or number the instructions asked by him was objected to at the trial. If timely attention had been called to such omission, the trial court might have declined to give the instructions thus informally requested until they had been signed and numbered.

The object in requiring prayers for instructions to be numbered and signed is not for the information or guidance of the jury, but for the convenience of the court and the protection of the parties litigant in the matter of preserving their objections and exceptions. If a party omits this requirement, or suffers the opposing party to do so without objecting in apt time, he will not be heard afterwards to complain of the omission. The trial court is not bound to entertain an objection that instructions are not numbered and signed when the same is presented for the first time on a motion for a new trial; nor will this court consider such an objection on appeal or writ of error, unless it appears that timely objection was made in the court below. *Wray v. Carpenter*, 16 Colo. 271; *B. & R. G. Ry. Co. v. Ryan*, 17 Colo. 98; *Gibbs v. Wall*, 10 Colo. 160; *Schoolfield v. Houle*, 13 Colo. 394; *Kan. Pacific R. Co. v. Ward*, 4 Colo. 36.

4. Appellants complain that the jury were instructed to the effect, that a party calling a witness is not precluded from proving the truth of any particular fact by any other competent evidence in direct contradiction to what such witness may have testified, and this, not only when it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief.

This instruction which states the law with substantial

accuracy, was directly applicable to the evidence before the jury. The plaintiff had called and examined as witnesses the three surviving persons who were present when the accident causing Tenney's death occurred. Brown, the foreman, had given testimony relating to the occurrence somewhat different from the testimony of Dean and Fuller. Though plaintiff had called Brown as a witness, and had thus, in contemplation of law, recommended him as worthy of credit, so that she could not call witnesses to directly impeach his general character for truth and veracity, yet she was not absolutely bound by his testimony, if she could show the contrary to be the truth by other competent evidence, and it was proper that the jury should be so advised. The authorities are quite uniform on this subject. 1 Greenleaf's Ev., sec. 443 ; 1 Wharton's Ev., sec. 549 ; *Babcock v. The People*, 13 Colo. 521, and authorities there cited.

5. It is assigned for error that one of the instructions permitted the recovery of exemplary damages. In substance that instruction stated the circumstances under which the jury might give such damages as they might deem just and fair (not exceeding $5,000) with reference to the necessary injury resulting to plaintiff from the death of her husband, having regard to the mitigating or aggravating circumstances attending the cause of such death ; and that in computing such damages the jury should consider Tenney's age, habits of industry and sobriety, his personal characteristics and qualities, his mental and physical capacity to render service, his business and the income derived therefrom, and the probability of his length of life, so far as such matters would affect the amount of damages to the plaintiff.

The former part of the instruction is substantially in the language of the statute. We are aware that in an action brought under the act of 1872, Session Laws, p. 117, this court, speaking by Mr. Justice Belford, declared that " when the injury is the result of wantonness, violence or gross negligence, it is competent for the jury to award punitive damages." *Kan. Pac. Ry. Co. v. Miller, Admr.*, 2 Colo. 467.

But in that case it was held that as the *body of the act* prescribes no rule of damages, the statute must be taken to embrace those rules ordinarily applied to like cases. . The act of 1877 under which this action is brought, is quite different; it prescribes in terms both a rule and a limit; it provides for giving *such damages as the jury may deem fair and just;* not exceeding $5,000; it further restricts the damages to the *necessary injury resulting from such death to the surviving parties entitled to sue.* This would seem to preclude the idea that damages as a punishment to the party causing the death could have been intended. Damages awarded as a punishment for causing the death of a man, may, or may not, be equivalent to the necessary injury resulting to his surviving wife. Her injury, so far as the statute undertakes to provide redress, rests upon a pecuniary basis. She may suffer as much pecuniary injury where the negligence causing her husband's death is slight as where it is gross. Her necessary injury depends, not upon the character of the act causing death, but upon the character, ability and industry of her husband in providing for his family—that is, upon the pecuniary value of his life to her, or the pecuniary loss she will be likely to suffer in consequence of his death. 2 Thompson on Negligence, p. 1289, *et seq.*; Sherman & Redfield on Negligence, sec. 610, *ad finem.*

If the statute provided that the jury in assessing damages should have regard to the "aggravating circumstances attending any such wrongful act," without more, it might, perhaps, be taken to indicate punitive damages; but as the word *aggravating* is used in contrast with the word *mitigating*, we are led to doubt that any such meaning was intended. Since mitigating circumstances relating to the act itself do not justify an assessment of damages less than compensatory, it is not reasonable to suppose that the aggregating circumstances contemplated by the statute are such as would justify an assessment of damages more than compensatory. Hence, a different idea must have been intended by the antithesis. Taken in connection with the preceding language of the sec-

tion, we are constrained to hold that the words "mitigating and aggravating circumstances attending such wrongful act," etc., contemplate circumstances, not relating to the wrongful act itself, but such as affect the actual damages suffered by the surviving party entitled to sue, either by way of diminishing or enhancing the same. Hence, the section allows compensatory damages only. If the legislature had intended to authorize exemplary damages they would, doubtless, have used different language, as in the act of 1889. Mills' Stats., sec. 1512. This they did not do; but lest the courts should be troubled with excessive verdicts which might be supposed to rest upon a vindictive basis, they placed an absolute limit upon the recovery in the class of actions thus authorized.

By the latter part of the instruction, as above stated, the recovery was limited to compensatory damages substantially as laid down by Chief Justice Thatcher in the case of the *D. & S. P. Ry. Co. v. Woodward*, 4 Colo. 9. Tenney was a young man. 28 years of age and, so far as appears, was of good character, industrious habits, and labored faithfully for the support of his family. The instruction was not erroneous. If defendants desired further instructions upon the measure of damages they should have requested them. It is nowhere suggested in the record that the damages awarded were in excess of the necessary injury resulting to plaintiff by reason of her husband's death.

6. The court gave full instructions clearly enunciating the law applicable to the several phases of negligence and contributory negligence as alleged and sought to be proved by the evidence on the trial. The ordinary legal rules relating to negligence and contributory negligence are so familiar and have been so often declared by this court that it seems unnecessary to discuss them at length.

Counsel for defendants prayed numerous instructions. Of these, the court gave a large number, but refused a larger number. The charge of the court as a whole was fair and complete. Some unnecessary instructions may have been

given, but none that were erroneous or misleading.  Some correct prayers for instructions may have been refused, but only such as had been otherwise given in substance.  As has been repeatedly held, the duty imposed upon the trial court necessarily involves a large discretion as to the form and style in which instructions to the jury shall be given.  Unnecessary instructions do not necessarily make a charge erroneous. Instructions once given in substance, need not be repeated. If all proper requests to charge are given in substance, and no instructions are given that are erroneous or misleading, the court must be held to have discharged its duty, and the judgment, if well founded in other respects, should not be disturbed, even though some unnecessary instructions have been given and some correct requests to charge have not been repeated.  To hold the trial courts to a stricter rule than this would practically result in overthrowing the judgment in nearly every contested case, and would be a clear violation of section 78 of the Code.  *Kan. Pac. Ry. Co. v. Cranmer*, 4 Colo. 524 ; *Kan. Pac. Ry. Co. v. Ward*, 4 Colo. 37 ; *City of Boulder v. Fowler*, 11 Colo. 398 ; *Dozenback v. Raymer*, 13 Colo. 451 ; *Marsh v. Cramer*, 16 Colo. 331.

The judgment of the district court is affirmed.

*Affirmed.*