[No. 3923.]

The Denver & Rio Grande Railroad Co. v. Spencer
ET AL.

27   313
f36   277

1. Negligence—Contributory Negligence—Question for Jury.

Where in an action for personal injury the question of negligence of the defendant or of contributory negligence of the person injured is dependent upon inferences to be drawn from acts and circumstances from which different intelligent minds may honestly reach different conclusions, it is for the jury to determine under appropriate instructions whether or not negligence or contributory negligence has been established. But if the undisputed facts are such that the inference of contributory negligence of the injured person is the only conclusion that can be logically deduced, the question is one of law for the court.

2. Same.

Deceased went to defendant's depot to meet a relative expected on an incoming train. The space used for receiving and discharging passengers was between two tracks, one of which was occupied by the train of another company with a "cut" to allow access to and from defendant's train. When both tracks were occupied by trains the space between the trains was five feet and eight inches. A baggage truck so constructed that it could be easily veered at either end had been left standing upon this space by defendant's employés. Its

width was such that if placed equidistant between the tracks it would clear the train on either side by one foot and seven inches. Deceased while waiting for the incoming train was moving up and down this space, and passed and repassed the truck. Other people were also upon the space in the neighborhood of the truck. As defendant's train came in the engine and two cars cleared the truck, but the third, though of the same width as those that passed, struck the truck and hurled it against deceased, causing his death. *Held* that the facts were sufficient to submit the case to the jury, and that the jury was justified in finding the defendant negligent in leaving the truck standing in the narrow space and that deceased was not guilty of contributory negligence.

3. RAILROADS—DUTY TO PERSONS LAWFULLY ON PREMISES.

A person who goes upon the premises of a railroad company at its depot for the purpose of meeting a relative expected on an incoming train is lawfully upon the premises, and the company is liable for injury inflicted upon him by the negligence of its employés while he is in the exercise of ordinary care.

4. SAME—EVIDENCE—RES GESTÆ.

In an action against a railroad company for negligently causing the death of one upon its premises at its depot, a conversation had between deceased and a female relative wherein he agreed to meet her at the train on which she was to arrive was admissible in evidence as part of the *res gestæ* to show that he was lawfully upon the premises at the time he was killed, and the testimony of a third party who purported to give what he remembered and understood as the conversation was competent.

5. DEATH BY WRONGFUL ACT—MEASURE OF DAMAGE.

Under the act of 1877 (Mills' Ann. Stats. sec. 1509) the measure of damage is compensatory only, and is a sum equal to the net pecuniary benefit plaintiff might reasonably have expected to receive from the deceased, in case his life had not been terminated by the wrongful act, neglect or default of defendant.

6. SAME.

In an action by children for the death of their father where plaintiffs were in no manner dependent upon deceased and deceased was sixty-eight years old and his accumulation of property was about $6,400 over and above his liability, and his annual earnings as employé in a bank and as a conveyancer and notary public were about $1,000 above his personal expenses, a verdict for $4,000 was excessive.

*Appeal from the District Court of Arapahoe County.*

THIS action was commenced by the appellees to recover damages for the death of their father, caused by the alleged

negilgence of the appellant.   From a verdict and judgment in their favor, the defendant appeals.

Messrs. Wolcott & Vaile, and Mr. Henry F. May, for appellant.

Mr. N. Q. Tanquary, for appellees.

Mr. Justice Gabbert delivered the opinion of the court.

. At the station of Colorado Springs appellant maintains several parallel tracks.   At the time deceased received the injuries resulting in his death, one of these tracks adjacent to the station proper was occupied by a Rock Island train, which was "cut" to allow access to trains arriving on tracks beyond.   Employés of appellant left a truck, used for handling baggage, between the track occupied by the Rock Island train and the one next beyond, so situate, it is claimed, that trains upon each of the tracks between which it was placed would clear it.   When these tracks were each occupied by trains, the space between the sides of the cars would be five feet, eight inches in width.   The width of the truck was such, that if placed equidistant between the two tracks, it would clear the trains upon each by one foot and seven inches. The space between these tracks where the truck was placed, was used by appellant to receive and discharge passengers. The deceased went upon this space for the purpose of meeting his daughter-in-law, whom he expected upon one of appellant's trains, which arrived over the track next to the truck, and next to the one upon which the Rock Island train was standing.   He was moving up and down this space in the near vicinity of the truck, when the expected train arrived.   The engine, baggage and smoking cars cleared the truck, but for some unexplainable cause, other than the inference that it must have been moved by some one, the next, though no wider than those that had passed, did not, but hurled it against deceased, inflicting injuries from which

he shortly expired. He was seen to have passed and re-passed this truck before the arrival of appellant's train. The truck was noticed by the engineer and fireman of the incoming train, who concluded that their train would clear it. The engineer also noticed people in the vicinity of the truck. It was so constructed that it could be easily veered at either end. Upon this state of facts, counsel for appellant contend that no negligence upon its part has been shown; and even if there was, the accident would not have happened but for the negligence of the deceased.

The first question presented is, was the placing of the truck between the tracks in the limited space provided, and in the immediate vicinity of where the trains of appellant received and discharged passengers, negligence? Although originally so placed that a moving train upon either track next to which it stood would clear it, yet its construction was such that it could be easily veered, when its position would be such that it would come in contact with a moving train. This would result in danger to those within that space in line with the direction the truck would be impelled by contact with a moving train. From these facts and circumstances, the jury concluded that appellant was guilty of negligence.

When the question of negligence is dependent upon inferences to be drawn from acts and circumstances of that character that different intelligent minds may honestly reach different conclusions on the question, it is for the jury to determine, under appropriate instructions, whether or not negligence has been established. *Lord v. Pueblo S. & R. Co.*, 12 Colo. 390; 2 Thompson on Negligence, 1236; *Colo. Cen. R. Co. v. Martin*, 7 Colo. 592; Sherman & Redfield on Negligence, § 11; *Empson Packing Co. v. Vaughn*, ante, p. 66.

Under this rule, the evidence is clearly sufficient to support the conclusion of the jury, that placing the truck between the tracks was negligence on the part of appellant.

The next question presented is, whether or not deceased was guilty of negligence but for which the accident would

not have occurred.   In this connection counsel for appellant make some suggestions relative to the comparative degrees of care which a carrier is required to exercise as between passengers and those who are not.   We do not believe it is necessary to go into a discussion of this question.   Deceased was lawfully at a place provided by appellant for the purpose for which he was there, at the proper time to carry out that purpose, and injuries received by him at this place through the negligence of its employés while in the exercise of due care and caution upon his part, appellant is responsible for. *Hamilton v. Texas & Pacific Ry.*, 64 Tex. 251; Pierce on Railroads, 275 ; *Tobin v. Portland S. & P. R. Co.*, 59 Me. 183; *New York C. & St. L. R. R. v. Mushrush*, 37 N. E. Rep. 954.

It is urged by counsel that as deceased must have seen the truck, he should have comprehended the situation, realized the danger to which he was exposed, could have avoided it, and having failed to do so, such failure was contributory negligence upon his part, which caused the accident.   When, on the question of contributory negligence, the facts and circumstances are such that different minds may honestly draw different conclusions therefrom, on this subject, it is within the province of the jury to determine that question. *K. P. R. Co. v. Twombley*, 3 Colo. 125; *Lord v. Pueblo, S. & R. Co.*, *supra; Moffatt v. Tenney*, 17 Colo. 189; *Denver T. Co. v. Reid*, 22 Colo. 349.

While, on the other hand, if the undisputed facts are such that the inference of contributory negligence is the only conclusion which can be logically deduced, the question is one of law for the court.   For the purpose of ascertaining whether or not, on the established facts, deceased was so clearly guilty of negligence that this question is one of law alone, or whether from the evidence, it was for the jury to determine, as a matter of fact, it is only necessary to refer briefly to the evidence and the acts of the employés of appellant.   If the presence of the truck in the position it was, should have at once suggested to the mind of an ordinarily prudent person

that it was liable to come in contact with the incoming train, then certainly it would have been the duty of the engineer and fireman, who were aware of its location, and who knew that persons were in its immediate vicinity, to have taken steps to prevent such a disaster, and their failure to do so would have been wantonly reckless conduct upon their part. When this case was here before (25 Colo. 9), it was held, upon evidence which is substantially the same as now presented by the record in the case at bar, that an instruction to the effect that if the jury found from the evidence that deceased was guilty of contributory negligence, appellant was not responsible, unless it appeared that its servants and employés were guilty of reckless conduct, was erroneous, for the reason that the evidence did not justify any such an instruction, there being no evidence tending to prove reckless conduct on the part of such employés. The conclusion deducible from this holding is, that the presence of the truck in the situation it was, did not suggest imminent danger. If this danger was not suggested to the minds of railroad employés whose experience would cause them to anticipate dangers from sources which would not make a similar impression upon the minds of those not versed in the hazards of railroading, it certainly cannot be said as a matter of law, that deceased should have detected danger which the employés of appellant did not. It is apparent, therefore, from the facts and circumstances, that whether or not the truck, situated as it was, should have suggested to deceased the danger to which he was exposed, from that source, is a question upon which different intelligent and honest minds might draw different conclusions, and the question of contributory negligence was, therefore, properly left to the determination of the jury. The finding that he was not guilty of such negligence is fully supported by the evidence.

Errors are assigned and argued, based upon the giving and refusal of certain instructions. From the views expressed on the two questions of negligence already considered, it is apparent that appellant cannot complain of either the instruc-

tions given or refused, and it becomes unnecessary to notice them in detail.

For the purpose of explaining the presence of the deceased at the place where he received the injury resulting in his death, evidence was admitted over the objection of appellant, to prove that he had gone there for the purpose of meeting his daughter-in-law, who was expected to arrive from Denver. In the former opinion in this case, it was held that a conversation between the deceased and his daughter-in-law, from which it appeared that he had arranged to meet her, was admissible as part of the *res gestae*, to explain his purpose in being at the place where he was injured. That ruling is, therefore, the law of the case on this subject and cannot be disturbed; but counsel for appellant contend that the declarations of third persons cannot be received for the purpose of proving this arrangement. From an examination of the evidence, it does not appear that the declarations of third persons were admitted. The witness who testified on this subject only purported to give what he remembered and understood was the conversation which took place between the daughter-in-law and deceased, with respect to her request that he should meet her at Colorado Springs on the arrival of the train from Denver, to which he assented.

The final question relates to the amount of damages assessed by the jury. The verdict was in the sum of $4,000, which appellant contends is excessive. The right of appellees to maintain this action is purely statutory; it did not exist at common law. The damages which they are entitled to recover must be limited to those of a compensatory character, in other words, to such pecuniary damages as they have sustained by reason of the death of their father. As aptly stated by the late Justice Elliott, in *Pierce v. Conners*, 20 Colo. 178:

"The true measure of compensatory relief in an action of this kind, under the act of 1877, is a sum equal to the net pecuniary benefit which plaintiff might reasonably have expected to receive from the deceased, in case his life had not

been terminated by the wrongful act, neglect, or default of defendant; * * * but it must be borne in mind that the recovery allowable is in no sense a *solatium* for the grief of the living, occasioned by the death of the relative or friend, however dear. It is only for the pecuniary loss resulting to the living party entitled to sue, resulting from the death of the deceased, that the statute affords compensation. This may seem cold and mercenary, but it is unquestionably the law."

At the time of his death his wife was living, and survived him about two years. The appellees were in no manner dependent upon him for support. The mere relationship between them and deceased cannot be made the basis of a recovery in this case, however much they may have grieved over his untimely death. Therefore, as stated in the former opinion in this case, " the pecuniary loss, if any, that resulted to them, by reason of the death, was in being deprived of their share of the money that he might accumulate during his expectancy of life." Or, under the evidence, their recovery must be limited to the sum which the father, by his personal exertions, less his necessary personal expenses, and those of his wife during her life, would have added to his estate, and which would have descended to the appellees as his heirs at law. The court so instructed the jury. Was this instruction followed? At the time of his death deceased was upwards of sixty-eight years of age; his expectancy of life was about nine and one half years. There is testimony to the effect that at the time of his death his annual income, arising from his personal exertions, after deducting his personal expenses, equalled the sum of about $1,000 per annum, although the evidence is not entirely satisfactory upon this point, for the reason that the witness testifying on this subject was not certain that he was fully advised regarding the personal expenditures of the father. The money earned by deceased from this source consisted of a salary of $1,500 per annum as an employé of a bank, and about $500 more per annum, earned as a conveyancer and notary, in connection with his bank duties. He had considerable income from investments, but this cannot

be considered, in estimating his annual savings. We mention this, however, because it appears that his net worth at the time of his death could not have been so very much in excess of the value of his bank stock, which was $6,400, because it appears that his other investments were incumbered in such an amount that, after deducting interest, there was but little left in the way of income from these sources, after payment of taxes. Had he lived the full term of his expectancy, and during that period been able at all times to continue to engage in the work in which he was employed at the time of his death, his net personal earnings would have exceeded much more than the damages awarded. It cannot be fairly assumed, however, or expected, that at his advanced age, he would have continued to labor during all the future years of his life. In considering this question, account should be taken of his liability to illness, his incapability of further exertions by reason of age, and that he might, on account of his years, conclude to retire from active work; that in all probability his age would soon incapacitate him from discharging his duties as an employé in the bank, in which he was engaged; that if he did continue to earn money for a portion of his expectancy of life, he would at least expend a part so earned for personal use during the remaining years. All these are contingencies which must be considered. Necessarily, the ascertainment of damages, dependent upon a variety of circumstances and future contingencies, is difficult of exact computation; but nevertheless, they cannot be presumed and arbitrarily given. Undoubtedly much latitude must be given a jury in cases of this character, but there must be some basis of facts upon which to predicate a finding of substantial pecuniary loss. *Diebold v. Sharpe*, 49 N. E. Rep., 837.

Except for the statute, appellees could not maintain this action. Its provisions are beneficent, but limited. In no case under it can damages exceed the sum of $5,000. Taking into consideration the evidence upon which the award of damages is based in this case, the contingencies to which we have directed attention, the improbability that deceased, dur-

ing the remaining years of his life, would have saved from net personal earnings a sum anywhere nearly approximating the damages awarded, and the disproportion of that sum to his previous accumulations, it is evident that the jurors certainly failed to consider the instructions of the court on the subject of damages, but must have been influenced by considerations other than those which the law recognizes as elements of damages in such cases. For these reasons, the judgment of the district court is reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

CAMPBELL, C. J., not participating.