THE COLORADO CENTRAL RAILROAD COMPANY V. MARTIN.

1. It is a well settled rule, upon the subject of negligence, that when the plaintiff so far contributed to the disaster by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part, the misfortune would not have happened, he is not entitled to recover.

2. Cases frequently arise wherein it becomes the duty of the trial court to determine the question of the negligence of the party as a matter of law. But where the conclusion from the evidence is fairly debatable, or rests in doubt, the question of negligence is always for the jury.

3. To warrant the court in instructing the jury that a party was guilty of negligence, the case must be such as to allow no other inference from the evidence.

*Appeal from District Court of Arapahoe County.*

THE facts are stated in the opinion.

Messrs. TELLER and ORAHOOD, for appellants.

Messrs. BROWNE and PUTNAM, for appellee.

BECK, C. J.  It appears from the transcript of the record that there have been two trials of this cause in the court below, the first resulting in a verdict for plaintiff of $7,000, and the second in a verdict of $2,000. Counsel for the appellee, who was plaintiff below, insist that no error intervened on the second trial, and cite authorities to sustain the rulings and instructions of the district court, but say in the concluding paragraph of their brief: " The verdict of the jury was so small that if the court can grant a new trial without violating any of the known principles of the law governing the case, we will not complain."

The disposition of this court is to sustain the judgments of *nisi prius* courts when it can be done without violating the known and settled principles of the law governing the cases and questions presented for review.

In the present case the judgment can only be sustained

on the theory that the defendant was guilty of negligence in failing to provide proper and safe means of carrying guns upon its trains, for their defense against train robbers, and that the plaintiff was not guilty of such contributory negligence as tended to produce the injury complained of.

One of the well known and well settled principles of the law, upon the subject of negligence, is that, when the plaintiff so far contributed to the disaster by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part, the misfortune would not have happened, he is not entitled to recover. The jury was informed of this rule, but it is apparent, upon a review of the evidence, that it was ignored by them in their deliberations.

We are of opinion that the verdict is not supported by the evidence, and also that the court committed two errors upon the trial. The first error was in instructing the jury, as a matter of law arising upon the facts proven, that the defendant was undoubtedly guilty of negligence. The other error was in the refusal to instruct the jury, as prayed by defendant's counsel, " that, under the evidence in this case, in view of the law of the case, the plaintiff is not entitled to recover, and your verdict should be for the defendant."

The effect of the instructions given was to declare the defendant guilty of negligence, as a matter of law, and to leave it for the jury to say whether, under all the facts and circumstances of the case, the plaintiff was guilty of such negligence as contributed to the injuries received by him, or whether he acted as a man of ordinary prudence in remaining in the service of the defendant, in view of the negligence of the latter, after the same became known to the plaintiff. These instructions were certainly misleading when applied to the facts disclosed by the proofs of both parties to the controversy.

The material and uncontradicted facts are, that an.

attack by train robbers had been threatened upon defendant's train on the portion of its railroad extending from Denver, Colorado, to Cheyenne, Wyoming territory, which lies north of Fort Collins in the state of Colorado. Trains had been attacked upon the Union Pacific Railroad shortly before, and the officers of the defendant company, having private information that an attack of its trains was contemplated, deemed it prudent to provide arms and ammunition for their defense, which was done about September 1, 1878.

Prior to that date the train officers carried their own arms.

The arms and ammunition provided by the railroad company were three breach-loading shot-guns, and one hundred cartridges charged with buckshot. These guns were placed by the superintendent of the defendant company in charge of the train baggage-master, there being but one passenger train on the road, which train made the round trip from Denver to Cheyenne and back each day.

The instructions of the superintendent were to keep the guns unloaded and wrapped up in a quilt or blanket which was provided, except when passing over that portion of the road upon which the attack was apprehended. After passing Fort Collins, outward bound, the guns were to be unpacked and charged, ready for use; and after reaching or passing the same point on the return, the cartridges were to be withdrawn and the guns again wrapped up in the blanket. Upon reaching Golden (the headquarters of the company), the package was to be delivered to the station baggage-master, to keep until the return of the train from Denver next morning, when he was to return the package to the train.

Two conductors, the plaintiff and one Davis, ran the train upon this route upon alternate days, each taking command of his train at Golden in the morning, upon its return from Denver.

Both conductors knew of these regulations and had frequently seen them carried out. The work of inserting the cartridges, and of afterwards withdrawing them, was easily and quickly done, and it does not appear that any accident occurred in carrying or handling the guns upon the train.

The injury complained of occurred at Golden on the 26th day of September, 1878. The immediate cause of the accident was the failure of the train baggage-master, on the 25th day of September, 1878, to withdraw the charges from the guns upon the return trip from Cheyenne, and before delivering the package to the station baggage-master at Golden. The plaintiff was in charge of this train, on the latter day, as conductor. As usual, he spent the night in Denver, and after leaving the train next morning, upon reaching Golden, that Conductor Davis might make his regular trip thereon, one of the guns was accidentally discharged while being put on board the train by the station baggage-master, the charge taking effect in the body of the plaintiff and seriously injuring him.

The guns were in the same condition at the time of the accident as when delivered to the station baggage-master the evening previous, all being rolled up in the blanket.

Respecting the duties and authority of the conductors of this train, the testimony is that it is the duty of the conductor to take charge of the train and everything on board from the time it leaves the depot until it arrives at its destination. All tools, and other things carried for the use of the train, all treasure boxes and property, are in charge of the conductor, and all the employees on board are subject to his orders. In case of an attack upon the train, he would be in command of its defense and have control of the arms. These are the affirmative facts disclosed by the evidence which we deem pertinent to the controlling questions presented by the record.

The plaintiff testified that he had received no instruc-

tions concerning the guns, but admitted that the train baggage-master was subject to his orders, and that in case of an attack of his train, he, the plaintiff, would have had charge of the guns and control the defense.    He admitted that he had never inquired whether the charges were removed from the guns before being placed in the care of the station baggage-master at Golden, or not, and did not know whether they were being handled at that point in a loaded or unloaded condition.    He made no inquiry whether the guns were loaded, or not, on the 25th day of September.

Concerning the duties of the railroad company, the court charged the jury, among other things, as follows: " Under such circumstances, the court charges you that it was the duty undoubtedly of the defendant company either to provide gun racks for the safe storage and carriage of the guns upon the train, so that they would not have to be taken off and put upon the train each day as the train passed and repassed Golden station, or else to have kept some competent and experienced person or persons to take charge of said guns and see to it that they were taken proper care of to guard against any accident, and that it was undoubtedly negligence to leave the putting of said guns upon the train, the putting them off again from the train to the station baggage-master and train baggage-master respectively, as common baggage, in addition to their other numerous duties to be by them performed."    *    *    *    " The court instructs you that the company or person that employs dangerous weapons or elements in the management of the business engaged in, must use extraordinary care in their management or use and if you find from the evidence that the defendant, at and before the accident referred to in the pleadings and evidence, was carrying guns on its trains, then it was required by its duty to its employees to use the most approved means for their transportation, so as to save harmless its servants required to use them; and

the court further instructs you, that if you find the defendant did carry those guns as it is alleged, then it was required either to carry said guns in a gun rack, or by placing said guns in the hands of a special agent charged with their custody, or some other manner equally safe."

When it is remembered that the railroad company did not leave to the respective baggage-masters mentioned the duty of putting loaded guns on and off its trains, but that the instructions of Superintendent Henry were to withdraw the charges on passing Fort Collins on the return trip; and when it is further considered that unloaded guns are just as harmless as any other species of baggage, it becomes evident that the above instructions overstated the duty and responsibility of the defendant.

Had the instructions of the superintendent been observed, it would have been as impossible for the accident to have happened, by putting on board the train this package of guns, as if the package had contained umbrellas or walking-sticks instead of guns.

In view of the evidence, it seems clear to our minds that plaintiff, as conductor of the train, was chargeable with the duty of seeing that these or other reasonable precautions were observed by the train baggage-master. If the officers of the defendant company had done nothing but provide the guns and ammunition for the defense of its trains, which is conceded to have been proper under the circumstances, it would have been the duty of the conductors, by virtue of their authority, to have made, and caused to be observed, such rules for the handling and care of these guns, as would have ensured the safety of both passengers and employees, and the safety from theft of the guns themselves. We cannot indorse the proposition that the failure of the defendant to provide one or more special agents of experience to take charge of three shot-guns, or its failure to provide gun racks upon the train for their storage and safety, constitutes negligence *per se.*

It is not charged in the complaint, nor does any witness testify, that the train baggage-master was not a person of experience in the use of fire-arms, nor does it appear that the plaintiff ever objected to his acting as custodian of the guns. The complaint and replication charge the negligence resulting in the accident upon the station baggage-master at Golden, over whom the plaintiff had no control, and upon the railroad company. The real facts are ignored, to wit: that the negligence which caused the accident occurred on the previous day on board the plaintiff's train, in the failure to withdraw the cartridges before placing the guns in the hands of the station baggage-master. The latter testified that he was not aware they were loaded, and the circumstances of the case show he had reason to believe they were not loaded. Doubtless it would have been a convenience to have had gun racks upon the train. The object of removing the guns into the company's baggage room every evening at Golden, was to prevent them from being stolen, during the night, in Denver. A secure closet upon the train, in which they could have been safely locked up during nights, would have saved much handling of the guns, and had the same been provided, it is probable that the accident complained of would not have occurred. Neither would it have occurred if the superintendent's instructions had been observed on board the plaintiff's train.

Cases frequently arise wherein it becomes the duty of the trial court to determine the question of the negligence of a party as a matter of law, as where the facts clearly show an obvious disregard of duty and safety; where a party has failed in a clear legal duty; where the evidence so clearly shows the want of prudence and discretion that there can be nothing for the jury to pass upon. *Behrens v. K. P. R'y*, 5 Col. 400; *Ernst v. Hudson River R. R. Co.* 35 N. Y. 41–47; *Detroit & Milwaukee R. R. Co. v. Van Steinburg*, 17 Mich. 122; *The*

*Pittsburg & Connelsville R. R. Co. v. McClurg,* 56 Pa. St. 297.

We are of opinion that the negligence charged against the defendant does not come within the above principles, or within any well settled rule of law which justifies the determination of the question as matter of law. On the contrary, the matter does seem to come within the opposite rule, that where the conclusion from the evidence is fairly debatable, or rests in doubt, the question of negligence is always for the jury. See authorities *supra;* also *Langhoff v. Milwaukee & Prairie du Chien R'y Co.* 19 Wis. 515.

It has been well said, that, to warrant the court in instructing the jury that a party is guilty of negligence, the case must be such as to allow no other inference from the evidence. And if the question depends upon a state of facts from which different minds may honestly draw different conclusions, the question must be submitted to the jury. Wells, Questions of Law and Fact, sec. 265 and authorities cited.

In respect to the negligence of the plaintiff, the admitted facts of the case show that while he had full knowledge of the facts that the guns were in charge of the train baggage-master during each day; that if needed for defense at all it was only upon the northerly portion of the road; of the custom of leaving them at Golden during the night; and although invested by his position as conductor with authority over the train baggage-master, as well as over all other employees upon the train, and with ample power to make and cause to be observed all rules necessary for the safety of passengers, employees and property, he failed to take any precautions whatever, so far as this record shows, to guard against accidents from the handling of the guns. He neither gave orders concerning the care of the arms, nor made inquiries how they were being cared for.

Independent of any orders from the superintendent,

the conductor could and should have commanded the custodian of the guns to withdraw the cartridges upon leaving that portion of the road upon which danger was apprehended. Common prudence dictates that this precaution should have been taken to guard against accident.

There is no force in the suggestion that the baggage-master's numerous duties conflicted with the safe handling of the guns. The withdrawal of the charges was the work of a moment, and there was ample opportunity to perform this duty when baggage was not being handled.

The evidence clearly shows the want of prudence and discretion on the part of the plaintiff, and an obvious disregard of duty and safety.

When the facts are clearly settled, and the course which common prudence dictates can be clearly discerned, the question of negligence is to be decided as matter of law. Shearman & Redfield on Negligence, p. 13, sec. 11 and notes.

We must hold, upon the record before us, that it presents the case of an injured party, who, knowing the dangers of his position, failed to exercise that reasonable degree of care to avoid the injury which an ordinarily prudent person would have exercised under like circumstances. We said, in *Behrens v. K. P. R'y Co., supra*, that a recovery of damages could not be sustained under such circumstances; that the doctrine of all the cases is, that if a plaintiff so circumstanced might have avoided the injury by the exercise of ordinary care, he cannot recover although the defendant was negligent.

If, therefore, it be conceded that the jury might have found the defendant guilty of negligence, had the question been submitted to the jury, it would have become a case of mutual fault or negligence, in which case the law neither casts all the consequences upon the defendant, nor attempts any apportionment thereof. Cooley on Torts, 674–78; *C. C. R. R. Co. v. Holmes*, 5 Col. 197.

In this condition or state of the case, it was error for the court to refuse to instruct the jury, as prayed by defendant's counsel, that the plaintiff could not recover. *Railroad Co. v. Jones*, 5 Otto, 439. But aside from this error, the verdict of the jury cannot stand, because it clearly appears that the plaintiff's negligence contributed to the injury, and because the verdict is against the law and the evidence.

The negligence of the train baggage-master in failing to carry out the instructions of the superintendent of the defendant company, was the negligence of a fellow-servant in the course of a common employment, and it not appearing from the testimony that he was an incompetent person to have the care and custody of fire-arms, or that he was inexperienced in their use, but only that he was guilty of negligence in that behalf, the defendant, for this reason, in addition to those above given, could not be held responsible, under the circumstances in this case, for the result of this negligence.

For the errors mentioned the judgment will be reversed and the cause remanded.

*Reversed.*