WOOD ET AL. v. CHAPMAN ET AL.

1. AMENDMENTS.

Nineteen months after answer filed, the defendants lodged with the clerk an amended answer setting up as additional matter a plea based on the statute of limitations which, on motion, was stricken from the files. Subsequently an application to refile the same was denied. *Held*, that the rulings were right, because there was no showing why that defense was not included in the original answer, because that defense was not well pleaded—there being no allegation that the possession and payment of taxes relied upon was for five successive years, and because the defense of the statute of limitations is not usually permitted to be set up for the first time in an amended pleading.

2. PRACTICE—OBJECTIONS.

It is too late to object on appeal for the first time that evidence was admitted on an issue which had been eliminated from the case by striking the pleading tendering it from the files.

3. SAME—STRIKING OUT EVIDENCE.

When evidence has been admitted under a promise to introduce other proof showing its materiality and there is a failure to produce that which was promised, it should be stricken out.

4. SAME—INSTRUCTIONS.

Instructions inapplicable to the case made by the evidence should be refused.

5. SAME.

Instructions referring to "the requirements of law" and "conditions precedent" without defining such requirements and conditions are calculated to confuse the jury and are erroneous.

6. SAME.

It is error to instruct the jury in an ordinary action for the recovery of real property that they may find against both parties. Such an instruction may be given only in an adverse suit under the acts of congress.

*Appeal from the District Court of Pitkin County.*

Mr. WILLIAM YOUNG, for appellants.

No appearance for appellees.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

This action brought in the district court of Pitkin county by H. N. and G. S. Wood as plaintiffs, against Luke Chapman and wife as defendants, was for the recovery of the possession of lots Nos. 4, 5, 6, 7, 8, 10, 11 and 12 in block No. 7 of Eames' Addition to the city of Aspen. The verdict of the jury was that plaintiffs were not the owners of any of the lots, and that defendants were the owners and entitled to possession of lot 12. The judgment was in accordance with the verdict, and the plaintiffs appealed therefrom to this court.

There is no appearance for the appellees. The record is voluminous and somewhat ambiguous, and both the transcript and the abstract are so unsatisfactorily made up that to determine the errors assigned, has involved much labor that would have been avoided had appellants brought here a systematically arranged record. After a careful examination we are satisfied that the judgment ought not to stand. Without discussing in detail the numerous objections raised by the appellants, we proceed to state some of the reasons for our conclusion which the record discloses.

The answer contained a general denial and an allegation of ownership in the defendants. Nineteen months after it was filed the defendants, without leave of court, lodged with the clerk an amended answer attempting therein to set up as additional matters a plea of the statute of limitations based upon possession under claim and color of title made in good faith, and payment of taxes for five successive years prior to the commencement of the action. Upon the plaintiffs' motion this amended answer was stricken out, and upon the subsequent application of the defendants made to the court for leave to refile the same, the request was denied.

These rulings were right, as no showing was made why the same defense was not included in the original answer; nor was the defense itself well pleaded, as there was no allegation therein that the possession and payment of taxes relied upon

was for five *successive* years.  The rulings, also, might be upheld upon the ground that the amended answer contained a defense which is not usually permitted to be set up for the first time in an amended pleading.  *Owers v. Olathe S. M. Co.,* 6 Colo. App. 1.

In one view what we have just said is not pertinent to the assignments of errors ; but, as will appear from a subsequent part of the opinion, this reference is appropriate to the discussion.

At the trial the plaintiffs deraigned title in themselves from the United States government to all the property except lot 12, and there they might with propriety and safety have stopped in the introduction of their testimony, except as concerned that lot.  But it seems that the other lots, or some of them, had been sold at tax sales, and the plaintiffs introduced numerous exhibits showing that by divers mesne conveyances from the purchasers at the tax sales title to said other lots became again vested in them.  They also introduced the treasurer's certificate that he had, at a tax sale, bid off for Pitkin county lot 12, and an assignment of the certificate to Edward Charlton, a subsequent tax deed from the treasurer to Charlton, as said assignee, and a deed from Charlton to the plaintiffs.

At this stage, then, assuming the regularity and sufficiency of this latter tax deed for lot 12, to pass title thereto, the plaintiffs had made a *prima facie* case as to all the property in controversy without considering the tax deeds conveying the seven other lots.

The defendants, in their own behalf, sought by the records of Pitkin county to show such irregularities and lack of conformity with the statute relating to tax deeds as made all of the tax deeds introduced by the plaintiffs absolutely void.

As to all of these tax deeds (except the one to Charlton for lot 12) it is, as it seems to us, immaterial whether they are void or convey title; for the plaintiffs have, as we have seen, otherwise shown title in themselves from the United States government; and there is nothing to show, and no

attempt to show, any divestiture of title as to these other lots
except by these numerous tax deeds. If, however, these tax
deeds are void, as the defendants claim, then no title ever
passed from the plaintiffs. If, upon the other hand, these
tax deeds were regular and sufficient *prima facie* to transfer
title, the mesne conveyances spoken of show that the plain-
tiffs have again acquired the property.

As to the tax deed of Charlton, the court seems to have
admitted it in evidence, and no objection, except as to the
acknowledgment, appears to have been interposed by the
defendants. From an examination of this deed it would
seem to be regular upon its face, and in substantial conform-
ity with the requirements of the statute in that behalf.
Whether, however, the trial court deemed the defendants'
attack upon it successful, we are unable with certainty to
determine, but as we find no order excluding it from the con-
sideration of the jury, and no instruction specifically appli-
cable to the evidence bearing upon it, we must presume, in
view of certain instructions of the court, to be hereafter
referred to, that the sufficiency of the deed and its regularity
were not passed upon by the court, but left to the determina-
tion of the jury.

The defendants also introduced evidence tending to show
possession, with a promise to follow it up with testimony
showing that they so held under claim and color of title
made in good faith, and that they had paid taxes—all under
their plea of the statute of limitations which, by a previous
order of the court, had been eliminated from the case.
While numerous specifications were made by the plaintiffs in
objecting to the introduction of this class of evidence, they
seem not to have relied upon the ground that the evidence was
permissible only under the eliminated plea, and that that was
no longer an issue in the case. The admission of the evidence,
therefore, might not be assigned for error by the appellants
upon the ground just indicated. *Stark et al. v. Brown et al.*,
101 Ill. 395. But the evidence itself entirely fails to sustain
such a defense, as there was no pretense that color of title

was shown, nor was there any proof that possession and the payment of taxes were for the requisite length of time.

This evidence as to possession, therefore, should not have been admitted, or, if admitted, as it seems to have been, subject to subsequent proof of color of title and payment of taxes, ought to have been stricken out when the plaintiffs, as they did, made a motion to that effect, because defendants failed to produce that proof which, and which only, made it admissible.

The defendants also introduced in evidence a quitclaim deed from Eames, the patentee of lot 12, bearing date the 10th of January, 1886. · The tax deed from the county treasurer conveying this lot to the grantor of the plaintiffs was for the nonpayment of taxes which became due and payable after the defendants obtained this conveyance. It is a little difficult to determine from the evidence whether the defendants rely for their title to lot 12 solely upon this quitclaim deed, or whether they count upon the quitclaim deed merely as color of title, followed by the statutory possession and payment of taxes. But as the court, in its instructions, apparently considered that the latter theory was held by the defendants, we shall indulge in the same presumption.

Coming now to the instructions of the court, we think it almost too apparent for argument that the case was improperly submitted. The court first stated to the jury the law of this state in relation to the statute of limitations, the plea of which had theretofore been eliminated from the case. The jury were then instructed specifically that there was no evidence of any right of the defendants to claim under this statute, except as to lot 12, and as to this lot, while not expressly so instructed, by inference, at least, they were told that there was evidence which they were at liberty to consider in determining whether the defendants had brought their case within its provisions.

But an examination of the evidence discloses that, though the jury possibly might have found that there had been possession for the statutory length of time, there certainly was

no sufficient proof of payment of taxes, or an excuse for not paying them,—there being an unsuccessful attempt to prove that there was a tender of taxes by defendants to the county treasurer which the latter refused to accept. This instruction was improperly given, if it was intended to apply to lot 12, for there was no evidence in the case to which it was applicable, and it must have misled and confused the minds of the jury.

As bearing upon the Charlton tax deed, and, apparently, also upon the other tax deeds introduced by the plaintiffs, the court gave instructions Nos. 6 and 8, as follows:

"6. The court instructs the jury that it is necessary that in order to convey title under a treasurer's tax deed, that all the facts set forth in the deed should be true, and that if it is shown that the requirements of the law have not been complied with as to the time of sale, the proper record of sale made, and deposited with the clerk and recorder of the county, as required by law, which must contain among other requirements the date of sale of the respective tracts."

"8. That the deed is the last act in the execution of the statutory power, and all conditions precedent must be complied with before it can lawfully be given. The deed in this state presumes these matters to have been done; but if it has been shown by the evidence that these requirements have not been complied with in any one of the requirements, then the deed must fail."

Assuming, but not deciding, that these instructions do not submit for the determination of the jury mixed questions of law and fact, we remark, in the first place, that instruction No. 6 is not complete in itself, for the court does not say to the jury what the legal consequences are if they should find there had not been a compliance with the things that are mentioned in the instruction. Both No. 6 and No. 8 refer to "requirements of the law" and "conditions precedent" which the jury are told are essential to the validity of a tax deed; and in instruction No. 8 the jury are further told that these requirements and conditions must ap-

pear in the proof, and unless they do, the deed must fail. Neither in these instructions nor elsewhere are the jury informed what the "requirements" or "conditions" are, so that they may intelligently pass upon the evidence. It is clear that the giving of these instructions is reversible error.

We find both in the transcript and the abstract that the last two instructions given by the court are Nos. 11 and 12. Apparently they were tendered by the plaintiffs and because of the alleged refusal of the court to give them the plaintiffs complain, although there is no order showing that they were refused. Upon the contrary, they appear to have been given, and if we are bound by the record (as we certainly are) we must conclude that both of these instructions were given to the jury just as the transcript and the abstract recite. If so, certainly the verdict is contrary to the instructions of the court; for in No. 11 the jury are expressly instructed that the plaintiffs are the owners of all the property in controversy and entitled to its possession, and while in No. 12 the form is somewhat varied, and excludes lot No. 12, yet as to the other lots the jury are directed to bring in a verdict for the plaintiffs. It would scarcely seem possible that these instructions were given by the court, for they are so inconsistent and contradictory of previous instructions, and it may be, and doubtless is, true that the transcript in this respect is incorrect. But it shows that they were given, and we mention this fact as one example of the unsatisfactory record which we have been compelled to examine.

The court, also, instructed the jury—probably confounding the practice with that obtaining in suits brought, under the authority of the federal statutes, in support of adverse claims to mining locations—that, if the evidence warranted it, they might find a verdict against both parties. We do not understand this instruction to be pertinent in an ordinary action, under our code, for the recovery of real property, but only in an adverse suit under the act of congress.

Other errors have been assigned and argued, which, in a

proper case, we might feel called upon to determine. But as they probably may not occur in the event of another trial, no useful purpose would be subserved by considering them at this time. Because of the commission of the errors already alluded to, the judgment of the court must be reversed, and it is so ordered.

*Reversed.*