[No. 1834.]

## ALLEN v. THE FLORENCE & CRIPPLE CREEK RAILWAY COMPANY.

15   213
e30s  461
15   213
20   357
15   213
33S  277

1. PRACTICE—NONSUIT—EVIDENCE.

A motion for nonsuit by defendant at close of plaintiff's evidence admits the truth of plaintiff's evidence, and every legitimate inference that may be drawn from it.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Negligence is a question of fact to be submitted to and determined by the jury, whether the question concerns the negligence of defendant or the contributory negligence of plaintiff. The same rule applies to both. If the evidence is such that reasonable men might fairly differ upon the question as to whether there was negligence or contributory negligence, the determination of the matter is for the jury, and it is only where the facts are such that all reasonable men would draw the same conclusion, that the question becomes one of law for the court.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK.

Where a railroad company constructed a bridge across a creek in its yard, over which it laid its track, and on each side of the track was a wagon way used in hauling freight to and from the cars of the railroad company, the fact that the bridge was the sole property of the company would not charge one using the bridge for the purpose of hauling freight from the cars, with the assumption of all risks incident to such use.

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

The fact that plaintiff drove a team with wagon upon a bridge across which the tracks of a railroad ran, when he saw a locomotive slowly approaching the bridge, was not contributory negligence as a matter of law, where the evidence tended to show that under ordinary circumstances and but for the fright of the mules caused by escaping steam, plaintiff's team had ample time, and would have crossed the bridge before the engine reached it.

5. SAME—ASSUMPTION OF RISK.

While one who voluntarily drives his team upon the property of a railroad company or in proximity to its engines while in operation, must be charged with knowledge of the sounds and noises that are ordinarily incident to such operation, and assumes the risk of his team becoming frightened by such noises, yet where unusual or unnecessary noises are made, or noises are made in a wrongful and negligent manner, the company may be liable for injuries done in consequence thereof.

6. CONTRIBUTORY NEGLIGENCE—ACTING UNDER SUDDEN DANGER.

A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required.

7. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE BY DEFENDANT OF PLAINTIFF'S EXPOSED CONDITION.

Notwithstanding a plaintiff might have been guilty of negligence in placing himself in a dangerous position, yet if defendant had knowledge of the exposed condition of plaintiff in time to avoid injury, and failed to exercise ordinary care to prevent the injury, defendant is liable.

*Error to the District Court of El Paso County.*

Messrs. BROOKS, STIMSON, WILLCOX & CAMPBELL and Mr. E. F. GRAY, for plaintiff in error.

Messrs. BLACKMER & MCALLISTER and Mr. TYSON S. DINES, for defendant in error.

WILSON, J.

By this action, plaintiff sought to recover damages for personal injuries alleged to have been received and suffered by him through the negligence of the defendant railroad company. At the conclusion of the evidence offered on behalf of plaintiff, the court, on motion, granted a nonsuit, and to this plaintiff assigns error. The motion for nonsuit was based and sustained solely upon the ground of plaintiff's contributory negligence. This court is, therefore, relieved from the consideration of the facts and much of the argument of counsel which bear upon the question of defendant's negligence. The sole question presented is: Did the evidence disclose such contributory negligence of plaintiff as would necessarily bar his recovery? This must be considered with reference to the fundamental principle that a motion for a nonsuit admits the truth of plaintiff's evidence, and every legitimate inference which may be drawn from it. *Hanley v. Construction Co.*, 59 Pac. Rep. 577; 117 Cal. 232.

Having reached the conclusion that the granting of a nonsuit was error, and that the cause must be remanded for a further trial, we will, from a sense of justice to both parties, refer only to such evidence as may be necessary to disclose the facts upon which our decision is based, and shall refrain so far as possible from an expression of our opinion as to its weight or consequence.

It appears from the evidence that the defendant company was the owner of a bridge across a small creek which ran through its yard in the town of Cripple Creek. It was forty-seven and one half feet in length and elevated fifteen feet above the creek. In the center, defendant had its main and a side track, and on each side of these were planked driveways for wagons, each about sixteen feet in width. At the southeast end, where the accident in question occurred, was an approach the full width of the bridge, extending twelve feet from it, built up on each side with stone masonry to a height of from five to six feet above the gulch at the end of the bridge, and east of this approach was a wide, open road-way northeast and south; that neither the sides of the bridge nor of the approach had any railing or other guard or protection. The plaintiff was a teamster, and was upon the day of the accident—as he had been for a number of months previous—engaged in unloading freight from the cars of defendant in its yard, and transporting it to its consignees. In the afternoon of the accident, while employed in his usual business, he was going to the yard of defendant for the purpose of unloading from its cars some lumber. The team—a pair of mules, shown by plaintiff's testimony to have been gentle and to have been engaged in this business about the yards of defendant for a number of months—was being driven by a competent driver in the employ of plaintiff. The wagon had no box upon it, being prepared for hauling lumber. The stakes of the hind bolster were bound round and spanned across with ropes and chains one or two feet above the bolster; plaintiff was sitting between the hind wheels on the hind hounds or reach, his feet hanging down on the right hand

or off side, with the binding pole behind him.  The driver sat on the front bolster, with his feet on the front hounds.  It was necessary in the route which plaintiff usually traveled, and which was the most direct road, to cross the bridge we have referred to, in order to reach the lumber which plaintiff was intending to unload and haul.  As the team approached the bridge, plaintiff, knowing that it was just past the time for the arrival of one of defendant's passenger-trains, looked to see whether there was any engine about, and saw defendant's engine, with a baggage car attached, at a distance of about 300 feet from the approach to the bridge, moving slowly, about as fast as a man would walk in that direction.  Plaintiff, thinking, as he said, that he had ample time to cross the bridge and approach before the arrival of the engine, told the driver to go on.  The team had crossed the bridge, and had just reached the approach, when, as plaintiff testified, the engineer, then nearing the bridge, commenced to let off steam from the cylinder cocks of the engine.  At this, the mules became frightened and stopped.  Upon attempting to urge them forward, the engine still coming towards them and steam still being emitted continuously, they began to rear and plunge.  The subsequent occurrences are best described in the language of the plaintiff himself:

"They just stopped still and cocked up their heads, and I looked up and saw the train coming; my driver raised up and pulled on the lines to drive them; as he did that, they pulled over on one side to turn off the embankment, and the train was still coming, and the team kept going back and forth; as I saw the train coming, I thought I was in a dangerous place, and I stepped off; I thought I could get over the hind end of the wagon, but as I tried to do that the team plunged, and I stepped out between the wheels; I made an effort to go between the engine and the mules; there was plenty of room then because the team bore down towards the embankment at that time, but as I did that, they flew up in front of the engine, and I saw there was no place there, so I turned around and thought I was quick-footed enough to get

out behind; I went back and got about to the edge of the hind wheel, but the mules were plunging and the wheel knocked me in front of the cow-catcher. * * * I noticed the steam escaping from the cylinder cocks when it was coming up from the first switch. * * *

"Q. Just at the time you jumped off what did they do at that time, or just before that time?

"A. They were rearing and plunging and about cramping the wagon off into the creek, about eighteen feet down and it looked like the mules, wagon and all were going off into the creek.

"Q. Was that the condition at the time you jumped off?

"A. Yes, sir.

And further:

"Q. When the mule team first stopped, they did not lunge back and forth, did they?

"A. No, sir, they stopped still. * * *

"Q. How long did you sit there until you thought you were in danger and tried to get away?

"A. A few seconds. * * * The mules pushed one way and then the other in the first place, and then he (driver) raised up and tried to drive them.

"Q. The mules had begun to rear and plunge before you got off your seat?

"A. Yes, sir, they just commenced. * * *

"Q. They never reared and plunged until after the driver touched them with the whip?

"A. No, sir; not until after he raised up and tried to drive them; then they began to rear and pitch and plunge.

"Q. Was it after you got off your seat on the wagon?

"A. It was just about that time; it was all done so quick that I can't tell every second what occurred."

Plaintiff got out between the wheels and started to run out in front, but this avenue of escape was blocked by the sudden turning of the mules. He then turned and ran back. As he reached the rear end of the wagon, the mules backing suddenly, cramped the wagon to one side, causing one of the

wheels to strike him with force sufficient to throw him on the railroad track, where he was caught under the pilot and pony trucks of the engine and dragged and rolled nearly across the bridge. This was, in substance, the testimony of plaintiff, and it was confirmed substantially by that of several witnesses who saw the occurrence.

Negligence is, generally speaking, a question of fact, and, as such, must under our system of jurisprudence be submitted to and determined by a jury. It sometimes becomes a question of law, but this is only in rare instances—it is the exception to the rule. When this does occur, depends upon the circumstances of each particular case, and this is true whether the question concerns the negligence of the defendant or the contributory negligence of the plaintiff. The same rule applies to both. There are, however, certain fundamental and general rules, well settled and firmly established, which are applicable to all such cases, and which must be observed by a court before it attempts to take the question from a jury. There have been repeated decisions in this jurisdiction, both by this court and by the supreme court, as to when, in cases of this character, a court is warranted in granting a nonsuit at the stage of the trial when it was granted in the present case. The rule thus established is, in substance, that the court must not invade the province of the jury, except in the clearest of cases, and will not grant a nonsuit on the ground of contributory negligence, unless the evidence, in the most favorable light in which it may reasonably be considered in behalf of the plaintiff, shows that the plaintiff was guilty of negligence which contributed to cause the injury as alleged, and without which the injury might not have happened. *Moffatt v. Tenney*, 17 Colo. 191; *R. R. Co. v. Martin*, 7 Colo. 599; *Lord v. Pueblo S. & R. Co.*, 12 Colo. 393; *Jackson v. Crilly*, 16 Colo. 107; *Solly v. Clayton*, 12 Colo. 33; *Empson Packing Co. v. Vaughn*, 27 Colo. 66; *City of Denver v. Soloman*, 2 Colo. App. 540; *Walters v. Electric Light Co.*, 12 Colo. App. 149.

In the *Empson Packing Co.* case, *supra*,—a very recent case,—the court said:

" When the determination of the question of negligence depends upon inferences which may be drawn from facts and circumstances of a character that different minds may honestly draw different conclusions therefrom, the question should be left to the jury."

In the *Walters'* case, *supra*, this court said:

" However, conduct may be so palpably imprudent and reckless as to leave no room for a difference of opinion concerning its character, and then, there being no facts to find, deliberation by a jury is unnecessary, and the court may apply the law directly to the case before it.    But where, upon facts in its possession, the character of the conduct is in any degree involved in doubt, it is never proper for the court to withdraw the question of negligence from the jury."

In fact, the rule as established in this state is, in substance, that if the evidence is such that reasonable men might fairly differ upon the question as to whether there was contributory negligence or not, the determination of the matter is for the jury.    It is only where the facts are such that all reasonable men would draw the same conclusion from them that the question becomes one of law for the court.    As concisely expressed in the *City of Denver v. Soloman, supra:*

" In order to justify the court in withdrawing the case from the jury, the facts of the case should not only be undisputed. but the conclusion to be drawn from those facts indisputable."

This rule is quite generally established and followed by the courts of all the states, and the sound and conclusive reason for it has been thus stated by the distinguished Judge Cooley, in *R. R. Co. v. Van Steinburg*, 17 Mich. 99.

" The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility. For, when the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a rea-

sonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence a definite rule of law. It is quite possible that if the same question of prudence were submitted to a jury collected from the different occupations of society, and, perhaps, better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge, trying a similar case, may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact, which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury."

Applying this well settled rule to the evidence produced on the part of the plaintiff, we think it quite clear that the court erred in sustaining the motion for a nonsuit. There was in no sense, as we view it, such a case as came within the rule which we have stated. The plaintiff had undoubtedly made out a *prima facie* case—how strong, it is not proper for us to say—but it was sufficient without the production of any evidence on the part of defendant to have sustained a verdict and judgment in his behalf.

It cannot be successfully contended that there was shown by the evidence contributory negligence on the part of plaintiff sufficient to bar a recovery on the ground that the bridge was the sole property of the defendant, and was situated upon its premises; that plaintiff had no right to use it; and that, if he did, he assumed all risks incident to such use. On the contrary, the testimony strongly tended to show that plaintiff was rightly upon the premises by the permission and invitation of the defendant company, and that the wagonways on the bridge were constructed for the identical use to which plaintiff was putting them at the time of the accident.

It is urged that it was negligence on the part of plaintiff to have driven on the bridge when he saw a locomotive in

1900.] · ALLEN v. FLORENCE & C. C. RY. CO.     221

the yards approaching him, as he admitted was the case. There was, however, testimony tending to show that, under ordinary circumstances, and but for the fright of the mules caused by the escaping steam, the locomotive was at such a distance that plaintiff's team had ample time and would have crossed the bridge and the approach before the engine reached it. Here was therefore presented a state of facts from which different minds might have drawn different conclusions, and, in such a case, according to all of the authorities, the question was one of fact for a jury, and not of law for the court.

It is urged by defendant that one who voluntarily drives his team upon the property of a railroad company or in proximity to its engines while in operation, must be charged with knowledge of the sounds and noises that are ordinarily incident to such operation, and that he assumes the risk of his team becoming frightened by such noises. This is true as a general rule, but, even then, it is well settled that where unusual and unnecessary noises are made, or noises are made in a wrongful and negligent manner, the company may be liable for injuries done in consequence thereof. *R. R. Co. v. Box*, 81 Tex. 670 ; 1 Thompson on Neg. 352. There was testimony to the effect that the blowing off of steam in this instance was unnecessary ; and, in any event, it was unnecessary to have continued this blowing off of steam until the bridge was reached, a fact which is charged to have been the chief and proximate cause of the accident. The numerous authorities which counsel for defendant cite upon this point are themselves all to the effect that if the opening of the valves was unnecessary, and was done under such circumstances as to imply a failure to exercise that care which a prudent and careful man would exercise under similar circumstances, the liability of the railroad company would attach. Here, again, were circumstances appearing from the testimony from which different minds might draw different conclusions, and the question did not, at least at that stage of the trial, become a question of law for the court.

Did the evidence presented clearly show that the plaintiff

was chargeable · with negligence in waiting too long before he attempted to escape ? It may be said that the testimony does not definitely designate the location of the approaching engine with reference to the location of the mules at the time when the plaintiff alighted from the wagon and attempted to make his escape from the danger. A number of witnesses, in addition to plaintiff, testified upon this point, and all differed somewhat as to the apparent distance between the approaching locomotive and the mules at this time. This was not surprising, because it was wholly a matter of conjecture or guess work, and that, too, under exciting circumstances and rapidly transpiring events. But the mere fact that there was this difference in judgment shows that it was a question of fact, upon which the court was not authorized to substitute its judgment for that of a jury.

Was the plaintiff negligent in the manner in which he attempted to escape ? It is urged that when he alighted from the wagon, he could easily have avoided all danger by running to the rear instead of to the front as he did. " A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required." *Transit Co. v. Dwyer*, 20 Colo. 139; *Mining Co. v. McDonald*, 14 Colo. 191; *R. R. Co. v. Kelley*, 4 Colo. App. 325.

Finally, however, even conceding that plaintiff was negligent in attempting to drive across the bridge at the time when he did; also that he was a trespasser, and that he was negligent in not sooner attempting to make his escape, yet the defendant might still be liable for damages. If plaintiff was at the time of, or immediately preceding, the accident in a position of peril, exposing him to the danger of bodily injury, and the defendant's engineer, with knowledge of this exposed condition, by the exercise of ordinary care might have prevented the injury, it was his duty to do so, and, failing in this, the plaintiff could recover. *Transit Co. v. Dwyer, supra; Hector Mining Co. v. Robertson*, 22 Colo. 491;

*Transit Co. v. Dwyer*, 3 Colo. App. 408; 2 Thompson on Neg. § 1108; *Coasting Co. v. Tolson*, 139 U. S. 558.

In the last cited case, the court said:

" Under such circumstances, the defendant's negligence would be the proximate, direct and efficient cause of the injury."

There was some testimony which would have justified the application of this rule, and which tended to show the liability of defendant on this account. Several witnesses testified that the frightened action of the mules and the exposed condition and peril of the team and the men upon the wagon were plainly visible to the engineer upon the locomotive for some distance before reaching the approach of the bridge; that he was leaning out of the cab window and looking directly toward the bridge, and yet he continued the noise of blowing off steam and failed to stop his engine, although it was going at such a slow rate of speed that he might have done so within a distance of six feet. There being some testimony to this effect, the court was not warranted in sustaining the motion for a nonsuit, even though, as we have said, the previous negligence of plaintiff may have been conceded.

We have, as we stated in the outset, quoted as little from the evidence as possible, and have endeavored to intimate no opinion as to the conclusiveness of its legal effect, because we did not desire to embarrass or prejudice the parties in the subsequent trial of the case.

For the reasons which we have given, the judgment must be reversed and the cause remanded for further proceedings in accordance herewith. Such will be the order.

*Reversed.*